BOARD OF EDUCATION OF CHARLES COUNTY ET AL.
*v.* EDUCATION ASSOCIATION OF CHARLES
COUNTY ET AL.

[No. 215, September Term, 1978.]

*Decided March 7, 1979.*

The cause was argued before MELVIN, MASON and MACDANIEL, JJ.

*Edward S. Digges, Jr.,* and *Susan Gillette,* with whom was *Edward S. Digges, Sr.,* on the brief, for appellants.

*Susan W. Russell,* with whom were *Walter S. Levin* and *James R. Whattam* on the brief, for appellees.

MELVIN, J., delivered the opinion of the Court.

On April 21, 1976, the Education Association of Charles County (Association) entered into a collective bargaining contract (Agreement) with the Board of Education of Charles County (Board). The Association had previously been designated by the Board as the exclusive bargaining agent for all certificated professional employees of the Board, pursuant to Article 77, § 160 of the Maryland Annotated Code (1957, 1975 Repl. Vol.).[1] Section 160 (h) of Article 77 required the Board, when requested by the Association, to meet and negotiate with the Association "in good faith" "with regard to all matters relating to salaries, wages, hours and other working conditions" "and to reduce to writing the matters agreed upon as a result of such negotiations". Section 160 (h) further provided that "such agreements may include a provision for the binding arbitration of grievances arising under such terms of the agreement as the parties have agreed to be arbitrable". The Agreement contained grievance procedures terminating in binding arbitration, with no restriction on the arbitrability of the matters agreed upon.[2]

The appellees in this case are the Association and one of its members, Darlene Sale. The appellants are the Board and the Charles County Superintendent of Schools, Jesse L. Starkey. Although not a named party to the April 21, 1976 Agreement, Starkey signed the Agreement in his capacity as Superintendent.[3]

The appellants appeal from an Order of the Circuit Court for Charles County, dated February 15, 1978. The order in

---

1. Article 77 was repealed by Acts 1978, ch. 22, § 1, effective July 1, 1978, and replaced by the Education Article of the Code (1978), with no substantive changes to those portions of former Article 77 that are pertinent to this appeal.

2. A "grievance" is defined in the Agreement as "a claim in writing that there has been a violation, misinterpretation, or misapplication of the terms of this agreement".

3. Section 61 of Article 77 provided:

"The county superintendent of schools shall approve, in writing, all contracts of whatever kind entered into by the county board of education, and no contract entered into by the county board of education shall be valid without the written approval of the county superintendent of schools".

effect confirmed an arbitration award of April 1, 1977, that "direct[ed] the School Administration to effect a transfer of the Grievant [Darlene Sale] to an available elementary school teaching position for the 1977-78 school year, in accordance with its contractual commitment". The matter was submitted to the trial court on motions for summary judgments filed by the opposing parties. The court's order granted the motion for summary judgment filed by the Appellees (the Association and Darlene Sale) and denied the motion for summary judgment filed by the appellants (the Board and Superintendent Starkey).

## I

The relevant undisputed facts that form the background of this dispute are as follows: In March 1976, Darlene Sale was a tenured certificated professional employee of the Board, working as a librarian at a Middle School in the Charles County School System. Her request to be transferred to a position as an elementary school teacher in the county was denied by the Superintendent. Following the grievance procedures set forth in the Agreement, Sale moved the matter to binding arbitration. An arbitration hearing was held on February 2, 1977, before a single arbitrator. The issue before the arbitrator was whether the Superintendent's denial of the grievant's request to be transferred to a teaching position was violative of the provisions of the collective bargaining Agreement. The arbitrator decided that the denial violated two provisions of the Agreement and, as already noted, on April 1, 1977, directed that "the School Administration ... effect a transfer of the Grievant to an available elementary school teaching position for the 1977-78 school year ...."

The two provisions of the Agreement the arbitrator decided were violated read as follows:

## "ARTICLE VI

## EMPLOYEE ASSIGNMENT

B.  Whenever possible, employees will be assigned to positions within the scope of their

professional certificates and/or their major or minor fields of study. Currently employed professional personnel not assigned within their area of certification will be given priority consideration in filling vacant positions within their area of certification."

and

"ARTICLE VII

VOLUNTARY REASSIGNMENT

A. In considering an employee's request for reassignment, the wishes of the employee will be honored to the extent that a vacancy for which he is qualified exists and there is no conflict with the best interests of the school system."

With respect to Article VI (B), the arbitrator based his finding of a breach upon his conclusion that "[t]he record contains no proof that it was not possible for the Board to transfer the Grievant to an elementary school teaching position". With respect to Article VII (A), the arbitrator found a breach because 1) the grievant Sale was "qualified", 2) "there existed vacancies to which she could have been transferred", and 3) in the opinion of the arbitrator there was no satisfactory evidence that the "Grievant's transfer conflicted with the best interests of the school system".

The appellants took no action to comply with the arbitrator's award. In October 1977, seven months after the award, the appellees petitioned the court for a decree confirming the award and directing the appellants to comply with it. In their answer to the petition the appellants alleged that "[t]he particular arbitration award was in direct confrontation with existing statutory law and constituted an aberration that is unenforceable". In granting appellees' motion for summary judgment, the trial court did not reach the merits of this defense. Instead, the court relied on the provisions of Maryland Rule E2 and certain provisions of the

Maryland Uniform Arbitration Act [4] (Cts. & Jud. Proceedings Article of the Code (1974), §§ 3-201 to 3-234 incl.)

Section 3-227 (b) of the Maryland Uniform Arbitration Act provides that, upon petition of a party, "[t]he court shall confirm the award, unless the other party has filed an application to vacate, modify or correct the award within the time provided in §§ 3-222 and 3-223". Because the appellants had at no time filed an application to vacate the award, the trial court felt that the appellants' attack upon the award, made by way of a defense to the petition for confirmation, came too late to be considered.

## II

Art. 77, § 6-201 (b) of the Education Article of the Code (1978) provided as follows:

"The county superintendent of schools shall nominate, for appointment by the county board of education, all principals, all teachers, and all other certificated personnel. *He shall assign them to their positions in the schools, transfer them as the needs of the schools require,* recommend them for promotion, suspend them for cause, and recommend them for dismissal in accordance with the provisions in § 114 of this article. (An. Code, 1951, § 147; 1939, § 136; 1924, § 139; 1916, ch. 506, § 72E; 1969, ch. 405, § 1.)" (Emphasis supplied.)

As we understand appellants' argument on appeal, it is that in view of this section of the State's education laws, the power to effect personnel transfers is vested exclusively in the superintendent and is a power that cannot be delegated to an arbitrator and any agreement to do so is void. As already

---

4. Although § 3-206 of the Md. Uniform Arbitration Act provides that the Act, enacted in Maryland in 1965, "does not apply to an arbitration agreement between employers and employees . . . unless it is expressly [so] provided in the agreement. . .", Md. Rule E2, adopted in 1967, provides that where court proceedings are "had to confirm, vacate, modify, correct, or enter judgment on the award", the provisions of the Act "concerning such proceedings shall be applicable" even though the Act is otherwise inapplicable.

noted, the trial judge did not consider this defense because the appellants had not petitioned the court to vacate the award within the time prescribed by the Maryland Uniform Arbitration Act. In his oral opinion, the trial judge indicated that the appellants had slept on their rights. We think they have not only slept on their rights, but have made the bed in which they slept.

## III

Here the appellants, presumably with legal advice, voluntarily agreed to all the provisions of the Agreement, including the provision to submit to arbitration any unresolved grievance of any certificated professional employee of the Board. "The parties further agree[d] to accept the arbitrator's award as final and binding upon them" (see Article II of the Agreement). The record reflects that the Board through the Superintendent and his staff participated fully in the arbitration proceedings by which they agreed to be bound. Maryland Rule E2 provides the procedure to be followed by the parties after a final written award has been made by the arbitrator:

> "After a final award has been made in writing in an arbitration to which the Maryland Uniform Arbitration Act is inapplicable, court proceedings may be had to confirm, vacate, modify, correct, or enter judgment on the award. In any such case, the provisions of the Maryland Uniform Arbitration Act concerning such proceedings shall be applicable."

The appellants took no action to vacate the award within the time limit provided by the Maryland Uniform Arbitration Act. The record reveals no reason whatever for their not doing so. Section 3-227 of the Act provides:

> "§ 3-227. Confirmation of award by court.
>
>   (a) *Petition.* — A party may petition the court to confirm the award.
>
>   (b) *Action by court.* — The court shall confirm the award, unless the other party has filed an application

to vacate, modify, or correct the award within the time provided in §§ 3-222 and 3-223.

(c) *Proceedings when award not confirmed.* — If an application to vacate, modify, or correct the award has been filed, the court shall proceed as provided in §§ 3-223 and 3-224."

Although this section was the sole basis for the trial court's order confirming the arbitration award, the appellants do not even mention the section in their brief. There can be no question that the provisions of the section are mandatory. ("The court *shall* confirm the award, unless . . . ." (emphasis added)). If the appellants claim, as they impliedly do, that the trial court is not bound by the literal command of the section (regardless of what grounds they now advance for not confirming the arbitration award), it was their duty to at least argue the point or cite some authority for the proposition that it is not applicable to this case. This the appellants have not done. Instead, they have chosen to ignore the section altogether and to argue only the merits of their defense.

In our view, the primary issue presented in this appeal is not whether the appellants have presented valid grounds for non-confirmation of the award but rather whether they can be heard to present those grounds at the time they sought to do so, in the face of the mandatory provisions of § 3-227 of the Maryland Uniform Arbitration Act. Having been presented with no argument or authority for not giving full effect to these mandatory provisions, and being unaware of any reason for not doing so under the circumstances presented, we hold that the trial court was correct in obeying the command of the section. *See Nick-George Ltd. v. Ames-Ennis, Inc.,* 279 Md. 385, 368 A. 2d 1001 (1977) and *Security Construction Co. v. Maietta,* 25 Md. App. 303, 334 A. 2d 133 (1975). Consequently, we do not reach the merits of appellants' defense to the petition for confirmation.

*Judgment affirmed.*
*Costs to be paid by appellants.*